Caroline A. ILLIES, Plaintiff, Appellant
and Cross–Appellee,

v.

Gerald P. ILLIES, Defendant, Appellee
and Cross–Appellant.

Civ. No. 900146.

Supreme Court of North Dakota.

Nov. 13, 1990.

O'Neel Law Office, Fargo, for plaintiff, appellant and cross-appellee, argued by Michael C. O'Neel, Fargo.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant, appellee and cross-appellant, argued by Bruce D. Quick, Fargo.

ERICKSTAD, Chief Justice.

Caroline Illies appeals from "the Amended Judgment dated January 29, 1990, and the subsequent Order Amending the Order Amending Judgment dated February 19, 1990" issued by the County Court for Richland County, sitting under assignment of the Presiding District Judge pursuant to section 27–07.1–17(9), N.D.C.C., asserting that the court erred in setting the child support obligation of ex-husband Gerald Illies, and in its allocation of dependency tax exemptions. Gerald Illies cross-appeals on the grounds that the court erred in setting the child support obligation of both parties and by reducing ex-wife's arrearages. We affirm in part, reverse in part, and remand.

Caroline and Gerald Illies were married on August 10, 1974. In August of 1980, Caroline filed for divorce in the District Court for Richland County. Trial of this matter was held before the Honorable Robert L. Eckert on September 21, 1981, with the judgment being entered on September 28, 1981. The judgment granted the divorce, distributed the couple's marital assets, and made provisions for the custody, support, and parental visitation of the children.

The district court's judgment provided that the couple would have joint custody of their three children, with physical custody being granted to Caroline during the nine school months and to Gerald during the summer months. Gerald was allocated the dependency exemptions for the two youngest children while Caroline was allocated the exemption for the oldest child. Additionally, Gerald was ordered to pay $250 per month in child support during the months that Caroline had physical custody of the children, and Caroline was ordered to pay $200.00 a month during the period Gerald had physical custody of the children.[1]

---

1. The original judgment provided that Caroline's support obligation would be set by the following formula:
   "The percentage of the Plaintiff's salary to Defendant's salary shall then be the percentage of $250.00 per month which the Plaintiff shall pay to the Defendant for the three summer months under the same terms as the Defendant's nine month child support period."

During the summer of 1984, Caroline expressed a desire and intention to continue her education. As a result, on August 8, 1984, the parties entered into a stipulation concerning the child support arrangement. The stipulation provided that Gerald's support payments would be reduced to $170 per month during the time Caroline had physical custody of the children. Caroline's support obligations were to be suspended until she completed or discontinued her educational plans. The district court approved the stipulation on August 28, 1984, with the condition that should either party begin to receive any type of welfare assistance, the original payment schedule would be revived.

In October of 1985, Gerald was notified that his support payments were in arrears. Upon further investigation Gerald discovered that his support payments had been increased to the amount set by the original payment schedule because Caroline began to receive governmental aid on September 1, 1985. On December 5, Gerald filed a motion to amend the August 28, 1984, order, with the intent of eliminating the provision that reinstated the original support obligations if either party received governmental assistance. Gerald also requested that he be allowed to claim all of the dependency exemptions until Caroline stopped receiving the governmental assistance.

On January 2, 1986, the district court issued an order in response to Gerald's December 5, 1985, motion. This new order provided that Caroline would be responsible for her support payments, but enforcement of those payments would be suspended until she completed her education. The order also provided that Gerald receive all three of the dependency exemptions during the period Caroline's support payments were suspended. In all other respects the original judgment of divorce dated, September 28, 1981, was to remain in effect.

In May of 1989, Caroline was graduated from North Dakota State University. On October 11, 1989, Caroline initiated a motion to establish the amount of arrearages, seek an increase in Gerald's support obligations, and eliminate her support obligations. Gerald responded with a counter motion to increase Caroline's support obligations.

On December 31, 1989, the county judge, hearing the case on assignment by the presiding district judge, issued an order amending judgment which set the support obligation to commence on January 1, 1990, at a rate of $225 a month from Gerald to Caroline for all twelve months of the year. Caroline's support obligation was eliminated. Gerald was granted all three dependency exemptions, and Caroline's arrearages were reduced from $3,450 to $2,500. Upon motion by Caroline, the court issued an order amending the order amending judgment which included the findings that Caroline's gross monthly income was $2,675 (net income $2,110) and Gerald's gross monthly income was $1,871 (net income $1,647.57).

Caroline appeals from the December 31, 1989, order amending judgment asserting that the court erred by setting Gerald's support payments at only $225 per month and by giving Gerald all three dependency exemptions. Gerald cross-appeals asserting the court erred by setting his support payments too high, eliminating Caroline's support obligation, and reducing Caroline's arrearages.

## I. The Support Payments

Caroline contends that the court erred when it failed to consider the child support guidelines in setting the amount of Gerald's support obligation. Subsection 3 of N.D.C.C. 14–09–09.7 establishes a rebuttable presumption that the amount of child support reflected in the guidelines is correct, and further provides that "[a] written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted." Caroline argues that, as the child support payments Gerald is required to make vary significantly from the payment schedule provided in the child support guidelines, and the court failed to make findings justifying this variance, the court erred in set-

ting the amount of Gerald's support obligation.

Caroline first raised this issue on appeal. We have previously stated that new issues cannot be considered for the first time on appeal. *Lynch v. Williston City Com'n*, 460 N.W.2d 136, 138 (N.D.1990); *Farm Credit Bank of St. Paul v. Stedman*, 449 N.W.2d 562, 565 (N.D.1989); *Kern v. Art Schimkat Construction Co.*, 125 N.W.2d 149 (N.D.1963). *See also, Lang v. Bank of North Dakota*, 423 N.W.2d 501, 502 (N.D. 1988) (allowing a new claim to be raised but recognizing that usually a new issue cannot be considered for the first time on appeal). Although Caroline did request that the court make additional findings concerning the parties' gross and net incomes, she at no time raised the issue that the court failed to follow N.D.C.C. 14–09–09.7 by failing to make written findings that the correctness of the guidelines had been rebutted by factors not considered by the guidelines. Because the question of whether or not the court must follow N.D.C.C. 14–09–09.7 in these respects was not raised in the trial court, we will not consider that issue on appeal. For the law of this case, as it determines the rights of the parties in this case, we will consider the appropriateness of the court's award of child support in light of our past decisions without reference to that issue.

■ The trial court has the power to modify the amount or method of support to be paid upon a showing that the financial circumstances of the parties has significantly changed. *E.g. Burrell v. Burrell*, 359 N.W.2d 381 (N.D.1985).

"A trial court's determination on modification of child support is treated as a finding of fact subject to the clearly erroneous standard of review under Rule 52(a), NDRCivP. *Bloom v. Fyllesvold*, 420 N.W.2d 327 (N.D.1988). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*"

*Koch v. Williams*, 456 N.W.2d 299, 300 (N.D.1990). However, we will not substitute our judgment for that of the trial court. That we may have viewed the evidence differently had we been the trier of the facts will not support a determination that the findings of the trial court were clearly erroneous. *Gabel v. Gabel*, 434 N.W.2d 722, 723 (N.D.1989). The court determined that the financial circumstances of both parties had significantly changed since the time of the original judgment and the subsequent hearings concerning support. In 1981, Gerald's gross monthly income was determined to be $1,287. The court found that the monthly gross income of Gerald for the year 1990 will be $1,871. In 1981, Caroline's gross monthly income was determined to be $1,029. The court found that the monthly gross income for Caroline for the year 1990 will be $2,675. In light of the evidence which supports these findings, we do not find the trial court's finding that there had been a significant change in circumstances to be clearly erroneous.

■ Caroline asserts on appeal, and Gerald asserts on cross-appeal, that the court erred in determining the amount of child support Gerald should pay. Gerald also asserts in his cross-appeal that the court erred in releasing Caroline from her support obligation. When determining the amount of child support to be paid by each party, the court focuses "on how the changed circumstances affect the financial needs of the supporting spouse and his or her ability to pay, as well as on the needs of the children and the dependent spouse." *Burrell*, 359 N.W.2d at 383 (citing *Corbin v. Corbin*, 288 N.W.2d 61 (N.D.1980)). The needs of the children will be balanced with the supporting parent's ability to pay. *Burrell*, 359 N.W.2d at 383. A parent's ability to pay is not necessarily indicated by earnings alone, but the court must also consider the parties' net worth, which includes physical assets and his/her earning ability as demonstrated by past income. *Id.* A trial court's determination of child support will not be reversed on appeal unless it is found to be clearly erroneous. *E.g. Fleck v. Fleck*, 427 N.W.2d 355, 357 (N.D.1988). We will conclude that such a finding is clearly erroneous when we are

left with a definite and firm conviction that a mistake has been made. *Burrell*, 359 N.W.2d at 383; Rule 52(a), N.D.R.Civ.P.

■ Specifically, the court found that: Caroline has a $15,000 debt as a result of the schooling which permitted her to increase her yearly income; Gerald is able to raise some food through his farming operations; Caroline's gross monthly income for 1990 will be $2,675, yielding a net monthly income of $2,110; and Gerald's gross monthly income for 1990 will be $1,871, yielding a net monthly income of $1,424.57.

In light of these findings and careful review of the record, we are not left with a definite and firm conviction that the trial court made a mistake in setting the amounts of child support the parties were to pay. Accordingly, we conclude that the district court's determination of the amounts of child support to be paid by each party, none on the part of Caroline and $225 per month less $50 per month towards arrearages until all arrearages are paid on the part of Gerald, was not clearly erroneous and therefore the judgment in that respect is affirmed.

## II. Tax Exemptions

■ Caroline asserts that the district court erred in granting Gerald all three dependency exemptions. We have previously determined that the trial court may allocate income tax dependency exemptions. *McKenzie v. Jahnke*, 432 N.W.2d 556, 557 (N.D.1988); *Fleck*, 427 N.W.2d at 359. Caroline argues that the tax exemptions should be allocated to her because such an allocation would result in a more effective use of the exemptions. Although it may be prudent to place the exemptions in the hands of the party who will most benefit, perhaps with a reciprocal reduction in the other party's support obligation, we have not previously required the trial courts to do so. Considering that the court has relieved Caroline of all support obli-

gation during the summer months, and her new earning power and substantial income, we are not left with a definite and firm conviction that the trial court erred in this respect and that this finding is clearly erroneous. The judgment in this respect must be affirmed.

## III. Arrearages

■ Gerald asserts in his cross-appeal that the district court erred in reducing the amount of Caroline's accrued support obligation. We have previously held that accrued and unpaid child support payments cannot be modified. *Koch v. Williams*, 456 N.W.2d at 302; *Meadows v. Meadows*, 312 N.W.2d 464, 467 (N.D.1981); *Geigle v. Geigle*, 294 N.W.2d 386, 390 (N.D.1980); *Gasser v. Gasser*, 291 N.W.2d 272, 276 (N.D. 1980); *Corbin v. Corbin*, 288 N.W.2d at 64; *Kinsella v. Kinsella*, 181 N.W.2d 764, 770 (N.D.1970). Caroline neither challenges our prior case law nor offers alternative authority. That part of the judgment which reduces the amount of Caroline's arrearages must therefore be reversed and the judgment in that respect be modified.

## IV. The Validity of the Guidelines

As two panels of our temporary Court of Appeals have reached opposite results on the application of the child support guidelines, mandated by section 14–09–09.7, N.D. C.C., as they are at least tangentially involved in this case, and confusion will result unless the validity of the guidelines is clarified, we have asked the parties to this case to brief the issue of the validity of the guidelines.[2] Because this issue was not raised in the lower court, our determination of that issue cannot apply to this case. *Lynch*, 460 N.W.2d at 138.

This is not the first time that we have declined to apply a decision to the case at hand and instead have applied it wholly

---

2. In *McDonough v. McDonough,* one panel of our temporary Court of Appeals determined that the trial courts are required to make written or specific findings explaining a deviation from the child support guidelines pursuant to subdivision 3 of N.D.C.C. 14–09–09.7. 458 N.W.2d 344 (N.D.App.1990). In *Huber v. Jah-ner,* a second panel of our temporary Court of Appeals determined that the child support guidelines established by the Department of Human Services under N.D.C.C. 14–09–09.7 had not been promulgated in accordance with Chapter 28–32, N.D.C.C., and were therefore not valid. 460 N.W.2d 717 (N.D.App.1990).

prospectively. *E.g., Walker v. Omdahl,* 242 N.W.2d 649, 658 (N.D.1976); *Forster v. N.D. Workers Comp. Bureau,* 447 N.W.2d 501, 503 (N.D.1989). In *Walker,* we noted:

> "The doctrine which we apply today is a modification of the 'Sunburst Doctrine' named after an opinion by Justice Cardozo in *Great Northern Ry. Co. v. Sunburst Oil and Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254 (1932)."

*Id.* at 658.

For prospective application, we will now consider whether or not N.D.C.C. 14–09–09.7 was properly promulgated.

■■■■■■■ The Department of Human Services is an administrative agency and is subject to the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. *Mullins v. Dept. of Human Services,* 454 N.W.2d 732, 734 (N.D.1990); *Falcon v. Williams Cty. Social Serv. Bd.,* 430 N.W.2d 569 (N.D.1988). In order to adopt a valid rule, the Department of Human Services must comply with the prescribed procedures which are found in Chapter 28–32, N.D.C.C. *Mullins,* 454 N.W.2d at 734; *Johnson v. N.D. Workers Comp. Bureau,* 428 N.W.2d 514, 518 (N.D.1988). A rule will not be determined to be valid unless it is adopted in substantial compliance with section 28–32–02, N.D.C.C., which requires the agency to afford all interested parties an opportunity to express their views on the proposed rule. *Mullins,* 454 N.W.2d at 734; *Johnson,* 428 N.W.2d at 518–19; N.D.C.C. 28–32–03(5) (N.D.1989).

■■ Gerald asserts in his brief and Caroline concedes in her brief that section 14–09–09.7, N.D.C.C., makes the support guidelines a rule that must be adopted in substantial compliance with Chapter 28–32, N.D.C.C.[3] The issue of whether or not the guidelines were promulgated in accordance with Chapter 28–32, N.D.C.C., was decided by a panel of the temporary Court of Appeals after submission of the parties' briefs, but prior to oral argument of this case. *See Huber v. Jahner,* 460 N.W.2d 717 (N.D.App.1990). *Huber* held that the guidelines had not been properly promulgated. In *McDonough v. McDonough,* 458 N.W.2d 344 (N.D.App.1990), another panel of the temporary Court of Appeals, in essence, held the provisions of 14–09–09.7 mandatory without being asked to determine whether or not the guidelines had been properly promulgated. We agree with *Huber* that the child support guidelines, established by the Department of Human Services under N.D.C.C. 14–09–09.7, are invalid because the Department of Human Services failed to promulgate the guidelines in compliance with Chapter 28–32, N.D.C.C.

Our decision in this respect shall not apply in this case, but it shall apply prospectively to all trial court cases decided after the issuance of the mandate in this case, and to those cases in which the issue was raised in a trial court prior to this opinion and are now on appeal or are eligible for appeal.

---

**3.** Section 14–09–09.7, N.D.C.C., was amended in 1989 to create "a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines is the correct amount of child support." Section 28–32–02(3), N.D.C.C., reads:

> "The agency shall adopt a procedure whereby all interested persons are afforded reasonable opportunity to submit data, views, or arguments, orally or in writing, concerning the proposed rule, including data respecting the impact of the proposed rule. In case of substantive rules, the agency shall conduct an oral hearing. The agency shall consider fully all written and oral submissions respecting a proposed rule prior to the adoption, amendment, or repeal of any rule not of an emergency nature. The agency shall make a written record of its consideration of all written

and oral submissions contained in the rule-making record respecting a proposed rule." A "Rule" under the Administrative Agencies Practice Act is defined as follows:

> "6. 'Rule' means the whole or a part of an agency statement of general applicability that implements, interprets, or prescribes law or policy, or the organization, procedure, or practice requirements of the agency. The term includes the amendment, repeal, or suspension of an existing rule...."

Section 28–32–01(6), N.D.C.C. We believe it is clear that, after amendment, section 14–09–09.7, N.D.C.C., requires the agency to promulgate the support guidelines as a "substantive" rule within the meaning of section 28–32–02, N.D.C.C. *See generally, Johnson v. N.D. Worker's Comp. Bureau,* 428 N.W.2d 514, 519 (N.D.1988).

This case is affirmed as to setting of support payments, affirmed as to the allocation of dependency tax exemptions, reversed as to the reduction of arrearages, and remanded to the trial court for appropriate amendment of the judgment.

GIERKE, J., concurs.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

VANDE WALLE, Justice, concurring specially.

I am uncomfortable with the apparent inconsistency in refusing to reach the issue raised by Caroline concerning the trial court's failure to make findings justifying the variance in support payments from the child-support guidelines but reaching the issue of the validity of the guidelines which neither party raised below nor on appeal until requested to do so by this Court.

However, as the opinion notes, there are inconsistent results being reached among the trial courts and among panels of the Temporary Court of Appeals. I believe that fact justifies the extraordinary action we have taken in the majority opinion to resolve the conflict and prevent further inconsistent results. Insofar as the procedure may appear unfair to Caroline, *i.e.*, to refuse to consider an issue she failed to raise below while considering an issue not raised by either party, she should nevertheless not prevail on the basis of rules which have no legal effect, notwithstanding the application of the "Sunburst Doctrine."

VERNON R. PEDERSON, Surrogate Justice, concurring specially.

Although it is advisable that this Court settle any differences resulting from contradictory opinions issued by panels of the Court of Appeals, it is my view that the most serious problems arising out of legislative authorization of "substantive/guidelines" have not yet been raised in any trial court. We should not now speculate what we might conclude in the future.

MESCHKE, Justice, concurring and dissenting.

I concur in parts I, III, and IV of the majority opinion. I join in the special concurrence of Justice VandeWalle. I respectfully dissent from part II on allocation of the dependents tax exemptions.

I am left with a definite and firm conviction that the trial court erred in allocating all three dependents tax exemptions to Gerald. Caroline is contributing a much larger share to the care and support of her three children than Gerald, since she has their physical custody for the nine school months. Her economic contribution to their food, clothes, shelter, and other needs necessarily exceeds the modest $225 per month contributed by Gerald for those months, no doubt by a large margin. Caroline has the larger income as well. In fairness, she should be allocated at least one tax exemption, if not two.

Our blindness to the uneven allocation of dependents tax exemptions in this case is a continuation of the unrealistic judicial attitudes that has brought on federally dictated guidelines for child support. I would reverse the allocation of the dependents tax exemptions and remand for reconsideration on that issue.